**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                               )
**FYNALLE FRE,**                   )
                               )
        **Plaintiff,**           )
                               )
       **v.**                   )        **Civil Action No. 15-2192 (RMC)**
                               )
**CHARLES MONK,** *et al,*     )
                               )
        **Defendants.**        )
_____)

## MEMORANDUM OPINION

This matter is before the Court on Defendants' Motion to Dismiss [Dkt. No. 15] and Plaintiff's Motion for Leave to File Amended Complaint [Dkt. No. 28]. For the reasons discussed below, the Court will grant the former and deny the latter.

## I.  BACKGROUND

On Sunday, October 11, 2015, there allegedly was "a collision between a pedestrian (Plaintif[f]) and a motor vehicle" in the Unit Block of E Street, N.W., Washington, D.C. Compl. [Dkt. No. 1] at 2 (page numbers designated by ECF). Metropolitan Police Department "Officer Charles Monk responded to a 911 call." *Id.* at 1. Officer Monk prepared an incident report describing the incident as follows:

> On 10/11/15 at about 0715 hours, [Plaintiff] reports that she was walking east bound in the Unit Block of E Street N.W. along the south side of the street directly across from the alley sep[a]rating 15 and 25 E Street N.W. She stepped from the sidewalk/driveway area and began to walk across the open lanes of traffic northbound[.] [Plaintiff] was attempting to cross the roadway and reach the north sidewalk.
>
> [The driver] was . . . backing from the alley between 15 and 25 E Street on the north side of the roadway[.] [She] stated, she signaled and waited for vehicular traffic to pas[s] in both directions. When it was safe to do so, she began to back [her vehicle] out of the alley[.]

[The driver] heard a female voice yelling and screaming. [Plaintiff] began to state, "you hit me."

Further investigation revealed no damage to [the vehicle]. [Plaintiff] was observed walking around by the reporting officer. She was carrying several heavy bags on her person. [She] displayed no signs of physical injury. [Plaintiff] further explained the right rear bumper area of [the vehicle] brushed against her left upper arm, knee and left side. [She] refuse[d] medical treatment. [The driver] stated, ["]I didn't see her in my mirrors nor did I believe I hit her[."]

[The driver] had legal usage and obeyed all traffic laws . . . while operating [her vehicle]. [Plaintiff] failed to use the proper crosswalk to cross the [street and she] was advised of the law for pedestrian's use of public space and roadways.

No NOI issued or further actions taken[.]

After further investigation of [Plaintiff's statements] and additional visits to the scene, "it's the investigating officer[']s op[in]ion that a[n] accident did not occur[.]   Statements and actions are inconsistent.

*Id.*, Ex. (CCN #15161351 – Traffic Crash Report) at 2.

According to Plaintiff, Officer Monk made "several errors on the police report." *Id*. at 2.  For example, the report allegedly misidentified the hotel in front of which the collision occurred, *id.*, misstated Plaintiff's actions before and during the alleged collision, *id.*, omitted Plaintiff's address, *see* Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss [ECF No. 19] (Pl.'s Opp'n) at 8, and indicated that Plaintiff "was in the street improperly," *id*.  Officer Monk allegedly "focused on details pertaining to [Plaintiff's] person that had no bearing on the incident," particularly by referring to the bags she was carrying thus "shift[ing] the narrative away from the collision to his perception of [her]."  Compl. at 2.  Plaintiff has asserted that "Officer Monk exhibited bias in his handling of the investigation and reporting of the incident," and as a result of his biased policing, she "was deprived of [her] right to fair and impartial due process." *Id*.

2

Plaintiff has had other encounters with MPD officers.  She allegedly "sought assistance in dealing with and reporting a verbal threat on [her] life (Oct. 4, 2015) and an actual battery (Oct. 11, 2015)," and based on the officers' responses she alleges "a pattern of bias by the [MPD that] has put [her] life at risk."  *Id.* at 3.  "In each case officers' selective hearing prevented them from fully grasping the facts as [Plaintiff] stated them, letting a single word or phrase determine the validity of the enter account of the events."  *Id.*  "As a result of [her] encounters with the [MPD] and the bias that is apparent, [Plaintiff] chose not to report a [third] incident . . . on October 18, 2015."  *Id.*; *see* Pl.'s Opp'n at 5.  Plaintiff "no longer feel[s] as if [she] can get the protection [and] justice from the [MPD]," and for this reason she "is suing for deprivation of rights, intentional interference, defamation [and] negligence."  Compl. at 4.  Among other relief, Plaintiff demands damages of $10 million.  *Id.*

## II.  DISCUSSION

### A.  Dismissal Under Rule 12(b)(6)

A plaintiff's complaint need only provide a "short and plain statement of [her] claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a)(2), that "'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  In other words, it must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Patton Boggs LLP v. Chevron Corp.*, 683 F.3d 397, 403 (D.C. Cir. 2012) (citing *Iqbal*, 556 U.S. at 678)).  "[W]here the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)).  For purposes of this discussion, the Court construes Plaintiff's

complaint liberally, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and presumes that its

factual allegations are true, *see Gray v. Poole*, 275 F.3d 1113, 1115 (D.C. Cir. 2006).  With these

considerations in mind, the Court concludes that the complaint must be dismissed.

### B.  The Proper Party Defendants

#### 1.  The Metropolitan Police Department Is Dismissed

Plaintiff identifies the Metropolitan Police Department as a defendant in this

action.  *See* Compl.  "It is well-settled that bodies within the [District of Columbia] Government

are not suable absent statutory provisions allowing such suit."  *McRae v. Olive*, 368 F. Supp. 2d

91, 94 (D.D.C. 2005).  The MPD is such an entity.  *See, e.g., Heenan v. Leo*, 525 F. Supp. 2d

110, 112 (D.D.C. 2007); *Robinson v. District of Columbia*, No. 03-CV-1455, 2005 WL 491467,

at *3 (D.D.C. Mar. 2, 2005).  Defendants move to dismiss the MPD as a party defendant, *see*

Mem. of P. & A. in Support of Defs.' Mot. to Dismiss (Defs.' Mem.) at 3, and the motion will be

granted, *see, e.g., Argote v. D.C. Metro. Police Dep't*, No. 15-CV-303, 2016 WL 107916, at *2

(D.D.C. Jan. 8, 2016) (citing *Allen-Brown v. District of Columbia*, 54 F. Supp. 3d 35, 40 (D.D.C.

2014)).

#### 2.  Mayor Bowser Is Dismissed

Plaintiff initially named Mayor Muriel Bowser as a defendant in this case.  *See*

Compl. (caption).  Subsequently, Plaintiff "request[ed] that the . . . Court remove Mayor Muriel

Bowser as a Defendant" and "add the District of Columbia as a Defendant in this case."  Am.

Compl. [ECF No. 12] at 1.  Based on this substitution, the Court will dismiss Mayor Bowser as a party defendant, and the District of Columbia and Officer Monk remain.

### C.  Plaintiff's Legal Claims

#### 1.  Due Process

The Court treats Plaintiff's allegation of "deprivation of rights," Compl. at 4, as a civil rights claim under 42 U.S.C. § 1983, which allows an individual to bring suit against a municipality for policies or practices that result in violations of constitutional rights.  *See Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978).  The statute in relevant part provides:

> Every person who, under color of any statute, ordinance, regulation custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 is not itself a source of substantive rights; rather, it is a method of vindicating federal rights conferred elsewhere.  *Albright v. Oliver*, 510 U.S. 807, 811 (1994); *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

To state a claim under § 1983, a complaint must allege facts sufficient to show that (1) the conduct of which Plaintiff complains was committed by a person acting under color of District of Columbia law, and (2) the conduct deprived Plaintiff of rights protected under the United States Constitution or federal law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  It is necessary first to identify the specific constitutional right at issue.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) ("All that is being established at this stage is that there is some constitutional harm suffered by the plaintiff, not whether the municipality is liable for that harm.").

According to Plaintiff, she "was deprived of [her] right of fair and impartial due process." Compl. at 2; *see* Pl.'s Opp'n at 3 (invoking Fifth and Fourteenth Amendments).[1] Officer Monk allegedly "was judge and jury handing [her] a guilty verdict in the form of the police report." Compl. at 2. Although the Complaint does not articulate Plaintiff's precise meaning of the term "due process," Plaintiff elsewhere asserts a right to "the fair, orderly, and just (impartial) judicial proceeding." Pl.'s Opp'n at 3. The Court has reviewed the Complaint, and found no factual allegation or even a suggestion that there was or should have been a judicial proceeding of any kind, and the traffic incident report prepared by Officer Monk is hardly the equivalent of a guilty verdict. Nor did the Complaint indicate what "process" Plaintiff was entitled to receive or how Defendants deprived her of that process.

### a. **Municipal Liability**

With respect to the District, even if Plaintiff had articulated a viable due process claim, the analysis would not be done. Rather, the Court next must determine whether the "complaint stated a claim that a custom or policy of the District of Columbia caused the constitutional violation alleged." *Baker*, 326 F.3d at 1306. The District of Columbia can be held liable under § 1983 only if it "is itself responsible for an unconstitutional deprivation of rights." *Atchinson v. District of Columbia*, 73 F.3d 418, 420 (D.C. Cir. 1996) (citing *Monell*, 436 U.S. at 690-91). In other words, "a municipality can be liable under § 1983 only where its policies are the moving force behind the constitutional violation." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (citations, brackets and internal quotation marks omitted); *see also Warren v. District*

---

[1]  Plaintiff fails to state a claim for a violation of the Fourteenth Amendment, which does not apply to the District of Columbia. *See Bolling v. Sharpe*, 347 U.S. 497, 498 (1954).

*of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004) ("[M]unicipalities are liable for their agents' constitutional torts only if the agents acted pursuant to municipal policy or custom."). Defendants argue that the complaint fails "to allege any facts to show that a District custom, practice, or policy was the moving force behind the alleged deprivation of her constitutional rights." Defs.' Mem. at 6.  Plaintiff responds that "[a]nything that occurs 2 or more times is said to be a pattern."  Pl.'s Opp'n at 5.  She contends that the "bias" she experienced when she reported incidents on October 4, 2015 and October 11, 2015, adequately demonstrates a custom, policy or practice.  *See id*.  Further, Plaintiff asserts that "[t]he MPD's lack of intervention policies, training and supervision regarding officer misconduct has created a culture/custom where egregious acts of misconduct carried out by officers on and off-duty are not properly penalized."  *Id*. at 4.  These unsupported assertions are far too vague to withstand Defendants' challenge.  Nowhere does Plaintiff identify the custom, policy or practice giving rise to an alleged constitutional violation, and this pleading defect is fatal.  *See, e.g., Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 59 (D.D.C. 2011) (finding that, where plaintiff "does not name or identify the policies, practices or customs, nor . . . cite[s] any incident other than the events alleged in her complaint that might provide a basis for concluding that [the Metropolitan Police Department] has any gender discriminatory policies, practices or customs," she is "merely speculating that an unidentified policy and uncorroborated practice or custom exists without providing any factual heft to support the allegation is insufficient to state a claim under § 1983").  Where, as here, Plaintiff offers "the very type of 'naked assertions' the Supreme Court found incapable of surviving a Rule 12(b)(6) motion to dismiss," *Jackson v. Donovan*,  856 F. Supp. 2d 147, 150 (D.D.C. 2012), *aff'd*, No. 12-5154, 2012 WL 4774677 (D.C. Cir. Sept. 21, 2012), her § 1983 claims against the District of Columbia must be dismissed, *see, e.g., Brown v.*

*Fogle*, 819 F. Supp. 2d 23, 28 (D.D.C. 2011) (dismissing § 1983 claim against District of

Columbia and individual defendants in their official capacities where "Plaintiff's sweeping

allegation of omission fails to identify a policy, practice or custom undergirding the wrongdoers'

unconstitutional behavior"); *Gabriel v. Corr. Corp. of Am.*, 211 F. Supp. 2d 132, 139 (D.D.C.

2002) ("Where a plaintiff fails to allege the existence of any policy or custom that could have

arguably violated his rights, dismissal is proper." (citing *Polk Cnty. v. Dodson*, 454 U.S. 312,

326-27 (1981))).

Nor can Plaintiff demonstrate the District's liability based on an allegedly

unconstitutional action on the part of Officer Monk. "[T]here is no vicarious liability for

constitutional violations. This point of law is incontrovertible; it is directly established by

Supreme Court and D.C. Circuit precedent." *Powers-Bunce v. District of Columbia*, 479 F.

Supp. 2d 146, 157 (D.D.C. 2007) (citations omitted); *McRae*, 368 F. Supp. 2d at 96 (finding that

the District "is not responsible for the actions of MPD officers on a theory of *respondeat*

*superior*"). Plaintiff's "complaint thus fails to allege a necessary element of a [§] 1983 violation,

namely, that there be a deprivation of rights 'under color of any statute, ordinance, regulation,

custom, or usage of [the District of Columbia].'" *Dant v. District of Columbia*, 829 F.2d 69, 77

(D.C. Cir. 1987) (quoting *Monell*, 436 U.S. at 691).

b. **Qualified Immunity**

By naming Officer Monk as a defendant to this action, the Court presumes that

Plaintiff intends to bring a constitutional claim against him in his individual capacity under

Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

This claim must fail because Officer Monk is protected by qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). It "exists to protect officers 'from undue interference with their duties and from potentially disabling threats of liability.'" *Lash v. Lemke*, 786 F.3d 1, 5 (D.C. Cir. 2015) (quoting *Harlow*, 457 U.S. at 806). It "applies in *Bivens* actions as it does elsewhere." *Id.* (quoting *Atherton v. District of Columbia*, 567 F.3d 672, 689 (D.C. Cir. 2009)). Because qualified immunity is "an *immunity from suit* rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, courts must "resolv[e] immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

The Court's two-part analysis requires that it determine whether the facts Plaintiff alleges make out a violation of a constitutional right, and whether the right was clearly established at the time of Officer Monk's alleged misconduct. *See Pearson*, 555 U.S. at 232. While the Court need not conduct its inquiry in any particular sequence, *see id.* at 236, in this case, it begins with the first prong.

Defendants argue that Officer Monk is entitled to qualified immunity because "Plaintiff has failed to show that [his] alleged conduct rose to the level of a constitutional violation." Defs.' Mem. at 4-5. The Court concurs. Plaintiff fails to allege the violation of her right to due process or any other constitutional right. It follows that the purported right could not have been clearly established at the time Officer Monk prepared the incident report.

The Court concludes that Plaintiff's complaint fails to allege that the District of Columbia or Officer Monk violated her constitutional rights, and Defendants' motion to dismiss her § 1983 claims therefore will be granted.

## 2. Negligence

"The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (internal quotation marks and citations omitted). The negligence of which Plaintiff complains arises from "several errors on the police report." Compl. at 2; *see* Pl.'s Opp'n at 8. Defendants argue that Plaintiff's claim is barred under the public duty doctrine. *See generally* Defs.' Mem. at 8-10.

"The public duty doctrine has long protected municipalities from negligence claims because it establishes that '[t]he duty to provide public services is owed to the public at large,' not to any specific individual." *McGaughey v. District of Columbia*, 684 F.3d 1355, 1358 (D.C. Cir. 2012) (quoting *Warren v. District of Columbia*, 444 A.2d 1, 3 (D.C. 1981) (en banc)); *see Klahr v. District of Columbia*, 576 A.2d 718, 719 (D.C. 1990) ("Under the public duty doctrine, a person seeking to hold the District of Columbia liable for negligence must allege and prove that the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public."). MPD officers "must often make split-second decisions in the face of uncertainty and danger, and the doctrine recognizes they need broad discretion to act without fear that a jury will second-guess their judgment with the 20/20 vision of hindsight." *McGaughey*, 684 F.3d at 1358 (citing *Morgan v. District of Columbia*, 468 A.2d 1306, 1311 (D.C. 1983)). Thus, "[t]he duty of the [MPD] to protect the citizens of the District of

10

Columbia from crime is a public duty, unenforceable by any one individual." *Morgan*, 468 A.2d at 1316.

Plaintiff counters that Officer Monk "violated the public duty doctrine by giving partial treatment" to the driver of the vehicle involved in the October 11, 2015 incident, thus "creat[ing] a special duty to the driver." Pl.'s Opp'n at 11.  She explains that she "just wanted to be treated fairly and impartially, not given any special treatment." *Id*.  In Plaintiff's view, "it's time for the public duty doctrine to be revamped," lest its use becomes "a means of denying justice to victims of constitutional rights violations, while offering no accountability nor responsibility be placed on the officer who committed those violations." *Id*. at 12.

Plaintiff's objection to the public duty doctrine does not warrant denial of Defendants' motion.  Here, Officer Monk's "actions and failings were solely related to his duty to the public generally and possessed no additional element necessary to create an overriding special relationship and duty." *Warren*, 444 A.2d at 3.  The Court therefore dismisses Plaintiff's negligence claim against the District and Officer Monk.

### 3. Defamation

Under District of Columbia law, the elements of a defamation claim are:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013) (citations omitted).

A statement is defamatory "if it tends to injure [P]laintiff in [her] trade, profession or community standing, or lower [her] in the estimation of the community." *Afro-American Publ'g Co. v. Jaffe*, 366 F.2d 649, 654 (D.C. Cir. 1966) (footnote and citations omitted).

Plaintiff refers to certain information excluded from the incident report, such as her address, and other information included in the report, such as its reference to the bags she was carrying, and its diagram portraying a person lying in the street, as "indicative of descriptions for people living on the street (transient) mentally ill, which were inferred and are not true [or] relevant." Pl.'s Opp'n at 9; *see* Compl. at 2. Plaintiff asserts that such statements "are in fact defamations of character[.]" Pl.'s Opp'n at 9. For purposes of this discussion, the Court assumes without deciding that these statements are defamatory.

The Court notes that the allegedly defamatory statements were made by Officer Monk in an incident report prepared in the course of his police duties. In these circumstances, it appears that the statements were "made under a qualified privilege, such as those of police acting in an official capacity." *Westfahl v. District of Columbia*, 75 F. Supp. 3d 365, 375 (D.D.C. 2014). Ordinarily such statements are not actionable so long as "the communication [is] made in good faith upon a subject matter in which the party communicating or the party receiving the communication has a legitimate interest," and there has not been "excessive publication or express malice." *Cousins v. Hathaway*, No. 12-1058, 2014 WL 4050170, at *11 (D.D.C. Aug. 15, 2014) (citations omitted).

All that is known of the allegedly defamatory statements is that they appear in the police report Officer Monk prepared in the course of performing his police duties in response to a 911 call on October 11, 2015. Thus, it appears that the statements were made by a person with a legitimate interest in making the statements who communicated them to others with a legitimate interest in receiving them. Nothing in the Complaint suggests excessive publication of the statements or malice. Thus, the Court identifies no basis to conclude that the statements in Officer Monk's report are actionable. *See Jackson v. District of Columbia*, 541 F. Supp. 2d 334,

345 (D.D.C. 2008) (finding qualified immunity where police captain made "statements . . . in connection with seeking [an] arrest warrant . . . in the course of his duties and were made to individuals," including his superiors, the prosecuting attorneys, "the judge signing the warrant and the judge presiding over the trial[, all of whom had] legitimate interests in receiving the communications"); *Trifax Corp. v. District of Columbia*, 53 F. Supp. 2d 20, 29 (D.D.C. 1999) (finding that "statements set forth in Office of the Inspector General Report, defamatory or not, are protected by absolute immunity").  The Court will dismiss Plaintiff's defamation claim.

### 4. "Intentional Interference"

The Complaint alleges "intentional interference," Compl. at 4, without explaining this purported cause of action further.  Plaintiff later mentions "intentional interference with a person," stating that she wanted "a record of [the October 11, 2015 incident] for future proceedings if [she] decided to pursue the matter."  Am. Mem. of Opp'n and Am. Compl. [ECF No. 20] at 3.  It is not clear whether and how Defendants interfered with the preparation of the police report.  Nor does it appear that "intentional interference" is a cognizable claim.

### D.  Plaintiff's Motion for Leave to Amend Complaint

Also before the Court is Plaintiff's Motion for Leave to File Amended Complaint and Memorandum of Law in Support.  Plaintiff's proposed pleading pertains to an alleged assault she sustained on March 20, 2016, roughly five months after the events giving rise to the instant action.  The Court is mindful that, under Rule 15(a) of the Federal Rules of Civil Proceure, "[l]eave to amend a complaint should be freely given in the absence of undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility." *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  And "[i]t is, by now, axiomatic that district courts have a special

responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the *pro se* litigant would be able to state a meritorious claim." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) (footnote omitted); *see Chandler v. District of Columbia,* 578 F. Supp. 2d 73, 79 (D.D.C. 2008) (denying leave to supplement complaint where "matters alleged in a supplemental pleading have no relation to the claim originally set forth and joinder will not promote judicial economy or the speedy disposition of the dispute between the parties").

The Court will deny Plaintiff's motion for leave to amend her complaint on the ground that the proposed amendment itself is subject to dismissal as futile.  See Foman, 371 U.S. at 182.  The proposed new claim is unrelated to and no more viable than the claims in the original complaint.

### III. CONCLUSION

Defendants' Motion to Dismiss [Dkt. #15] is **GRANTED**, and Plaintiff's Plaintiff's Request for Scheduling Order [Dkt. #27] and Plaintiff's Motion for Leave to File Amended Complaint [Dkt. #28] are **DENIED**.  A memorializing order accompanies this opinion.

Date: February 15, 2017

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge